IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUMP TRADING, LLC, an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> BRUCE LO, <br><br> Defendant. | No. FILED: JULY 7, 2008 <br> 08CV3860 <br> JUDGE NORDBERG <br> MAGISTRATE JUDGE BROWN <br> NF |

## COMPLAINT

JUMP TRADING LLC, an Illinois limited liability company, through its attorneys Vanasco, Genelly & Miller, seeks injunctive and other relief against BRUCE LO.

### PARTIES

1. Plaintiff, JUMP TRADING LLC ("Jump"), is an Illinois limited liability company with offices in Chicago, Illinois. Jump is in the business of trading securities and commodities on various worldwide markets.

2. Defendant, BRUCE LO, is an individual who at all times relevant, resided in Chicago, Illinois. Lo is a 2005 graduate of Stanford University with a Master's degree in Computer Science. Upon graduation, he was hired for a trader position with Jump. His duties at Jump included developing trading software utilized by the company ("Jump Software").

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the matter pursuant to 28 U.S.C. 1331. This action arises under the U.S. Computer Fraud and Abuse Act, 18 U.S.C. 1030(g).

4. Venue is proper in this Court because both Jump and Defendant were residents of Chicago, Illinois at all times relevant and both are parties to an ongoing suit in a court located in this District.[1]

## BACKGROUND

5. Jump is a proprietary trading firm doing business on various markets. As a core activity of its business, Jump develops software applications and customized enhancements to commercial trading software. Jump invests millions of dollars annually in software and custom, in-house software development.

6. Computer software is written initially in a human-readable computer "language." For the Jump Software, Jump used the Visual C++ computer language. The human-readable commands of computer software are known as "source code." The source code is translated into machine-readable commands ("compiled code") before it can be operated by a computer. The source code and compiled code are sometimes collectively referred to as "software."

7. The security of Jump's source code and compiled code is paramount. Each Jump employee is required to execute a Proprietary Information and Invention Assignment Agreement ("Invention Agreement") upon becoming employed by the company. The Invention agreement provides that all intellectual property created by the employee while employed at Jump will be exclusively Jump's property. In addition, the Invention Agreement prohibits the employee from copying, removing, distributing or destroying company information, including its source code.

8. Access to company facilities is regulated by keycard, and no person not associated with Jump is allowed unescorted on Jump's trading floors. No person without a specific, company authorized purpose is allowed to view Jump's source code.

---

[1] This action is related to a pending action in the Circuit Court of Cook County, Illinois, *Jump Trading, LLC v. Bruce Lo*, No. 06 CH 13948, before the Hon. William O. Maki. Judge Maki has declined jurisdiction over this

2

9.    Jump occasionally allows senior developers to continue working on source code after market hours in their homes, as such software enhancements are sometimes needed from one trading day to the next. However, all copies of such software are required to be deposited at Jump.

10.   On July 5, 2006, Lo announced that he would be leaving Jump as of the close of business July 10, 2006.

11.   William DiSomma, a Jump principal and Lo's direct supervisor, asked Lo to work with Zubair Anwar ("Anwar"), another senior software developer at the firm to transfer his knowledge of the applications he had developed and introduce Anwar to the source code. Lo agreed. However, when Anwar asked Lo on Thursday, July 6 to meet and discuss the source code, Lo put him off. When Anwar asked again the morning of July 7, Lo put him off again and said "I need to talk to Billy." "Billy," refers to DiSomma.

12.   In the late afternoon of Friday, July 7, 2006, Lo met with DiSomma in his office and demanded $200,000.00 for any further cooperation. This was a direct violation of Lo's Invention Agreement.

13.   DiSomma refused Lo's demand and requested that Lo turn in his keycard. As of the end of the meeting with DiSomma, Lo was not authorized to access Jump's computers.

14.   Following the meeting with DiSomma, however, Lo returned to the computer that had been assigned to him. Lo, without authorization, downloaded the source code for the Jump Software to a "thumb drive" and then deleted it from the computer system. Lo also installed and operated a "disk wipe" program on Jump's computer system to remove all traces of the source code.

federal claim.

15. On July 10, 2006, Anwar reported to Jeffrey Watt, Jump's Windows NT network administrator, that he could not locate the source code for the application Lo had been working on. Watt reported the same to Robert Young, Jump's director of development, who investigated and determined that the source code had been removed from Jump's computer system.

16. Watt and Young later determined that the source code had been deleted on July 7.

17. Lo possessed a complete copy of the source code on the thumb drive and a notebook computer he owned.

18. In an email exchange with DiSomma, Lo reiterated that he was only willing to return the source code if Jump paid him, in violation of his express obligations in the Invention Agreement.

19. No one at Jump other than Lo had access to the source code for the Jump Software; Lo protected the source code and prevented others, including Anwar, from obtaining copies.

20. The compiled version of the Jump Software Lo left on Jump's computers on July 7, 2006 contains a subroutine, module, or code segment ("Logic Bomb") which operates as follows:

    a. Upon startup, the application queries the system registry of the Microsoft operating system to determine whether a coded string exists within the registry at a particular address;

    b. If the coded string does not exist, the application determines whether the current date/time is greater than a date/time encoded in the application ("encoded date");

    c. If the date/time is less than the encoded date, the application continues to operate;

    d. If the date/time is greater than the encoded date, the application writes the coded string to the system registry and terminates;

   e. Further attempts to start the application result in immediate termination.

21. Lo was not authorized to incorporate a Logic Bomb in the Jump Software.

22. Jump discovered the Logic Bomb on July 14, 2006, after the software first failed to start.

23. Jump's business was significantly disrupted by the Logic Bomb and it suffered significant economic damage as a result. The disruption continued for several days, until after Lo produced source code to Jump pursuant to an order of the Illinois Court.

## COUNT I

## VIOLATIONS OF THE

## UNITED STATES COMPUTER FRAUD AND ABUSE ACT

24. Jump realleges and incorporates Paragraphs 1-23, above.

25. The U.S. Computer Fraud and Abuse Act, 18 USC § 1030 ("CFAA"), states, in relevant part:

> (a) Whoever--
>
> > (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;
> >
> > (5)
> >
> > > (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
> > >
> > > (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
> > >
> > > (C) intentionally accesses a protected computer without

>>authorization, and as a result of such conduct, causes damage;

shall be punished as provided in subsection (c) of this section.

(e) As used in this section--

>(1) the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;

>(2) the term "protected computer" means a computer--

>>(A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or

>>(B) which is used in interstate or foreign commerce or communication;

>(4) the term "financial institution" means—

>>(F) a broker-dealer registered with the Securities and Exchange Commission pursuant to section 15 of the Securities Exchange Act of 1934;

>(6) the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter;

>(8) the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information, that--

>>(A) causes loss aggregating at least $5,000 in value during any 1-year period to one or more individuals[.]

(g) Any person who suffers damage or loss by reason of a violation of this section, may maintain a civil action against the violator to obtain

>compensatory damages and injunctive relief or other equitable relief. Damages for violations involving damage as defined in subsection (e)(8)(A) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.

26. Jump is a broker-dealer registered with the Securities and Exchange Commission and the Financial Industry Regulatory Authority. It is also a member of the National Futures Association and registered with the Commodity Futures Trading Commission. Jump is a "Financial Institution" for purposes of the CFAA.

27. Jump's computers, including the computer accessed by Lo, are used in interstate and foreign commerce and/or are computers of a financial institution. Therefore, Jump's computers are "protected computers" for the purposes of the CFAA.

28. Lo intentionally accessed Jump's computers following the meeting with DiSomma on July 7 without authorization or in excess of the authority granted to him by Jump.

29. Lo accessed the Jump computer with the intent to defraud Jump by forcing Jump to pay him $190,000.00 to which he was not entitled and to which he knew he was not entitled.

30. Lo knowingly caused the transmission of a program, information, code, or command in the form of the Logic Bomb, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer;

31. Lo intentionally accessed Jump's computers without authorization when he inserted the Logic Bomb in the source code for the Software. Lo's insertion of the Logic Bomb in the Jump Software damaged or recklessly damaged a protected computer.

32. Lo intentionally accessed Jump's computers without authorization when he inserted and operated the "disk wipe" program in a Jump computer. Lo's operation of the "disk wipe" program on a Jump computer damaged or recklessly damaged a protected computer.

33. Jump has incurred economic losses in excess of $5,000.00 in a five-day period as a direct, proximate result of Lo's conduct, in an amount to be proven at trial.

WHEREFORE, Plaintiff Jump Trading LLC respectfully requests that this Court:

A. Award Jump damages in an amount to be determined, but not less than $150,000.00; and

C. Grant such other and further relief as is just and proper.

> Respectfully submitted,
>
> JUMP TRADING, LLC,
>
>
> BY:     s/James E. Judge
>             One of Its Attorneys

Gerald M. Miller, Esq.
James E. Judge, Esq.
VANASCO, GENELLY & MILLER
33 N. LaSalle St., Suite 2200
Chicago, IL 60602
(312) 786-5100